IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FEDEX GROUND PACKAGE | ) | |
| SYSTEM, INC. | ) | |
|      Plaintiff/Counter- | ) | |
|      Defendant | ) | |
| | ) | |
|     v. | ) | |
| | ) | |
| APPLICATIONS INTERNATIONAL | ) | |
| CORPORATION | ) | Civil Action No. 03-1512 |
|      Defendant/Counter- | ) | |
|      Plaintiff | ) | |
| | ) | |
|     v. | ) | |
| | ) | |
| COMPUTER AID, INC.; FEDEX | ) | |
| SUPPLY CHAINS SERVICES, INC.; | ) | |
| FEDEX GROUND PACKAGE SYSTEM | ) | |
| LTD., | ) | |
|      Counter-Defendants | ) | |

MEMORANDUM and ORDER

Gary L. Lancaster,
District Judge.                                    September 12, 2008

This dispute stems from a contract between plaintiff, FedEx Ground Package System, Inc., ("FedEx" or "FXG") and defendant, Applications International Corporation ("AIC"). FedEx alleges that AIC breached a contract to develop and maintain a computer software program. FedEx also asserts claims for unjust enrichment, conversion, and declaratory judgment. In short, FedEx alleges that AIC never provided FedEx with the computer program it promised. FedEx seeks monetary, equitable, and declaratory relief.

AIC responded to FedEx's complaint by filing counterclaims against FedEx and a third party complaint against Computer Aid, Inc., ("Computer Aid"), FedEx Supply Chain Services, Inc., ("FXSCS"), and FedEx Ground Package System Ltd. ("FXG LTD") based on the same operative facts. Specifically, AIC asserts claims for copyright infringement, misappropriation of trade secrets and proprietary information, breach of contract, conversion, unjust enrichment, and declaratory judgment. In short, AIC accuses FedEx of failing to pay AIC for its work, and of later providing AIC's computer programs to another vendor without permission. AIC also seeks monetary, equitable, and declaratory relief.

As summarized below, the parties have filed six motions for partial summary judgment with respect to various claims and counterclaims. We are able to dispose of some of AIC's state law claims on legal grounds. However, due to the prevalence of disputed factual issues in this case, for the most part these motions will be denied. This matter must be submitted to a fact finder for final determination.

I. <u>SUMMARY OF PENDING MOTIONS</u>

First, the parties have filed cross-motions for partial summary judgment [Doc. Nos. 145 and 144] on their respective breach of contract claims. At their heart, these motions seek a determination as to which party committed the first material breach of the contract. However, because of the factual disputes

surrounding this issue, and the difficulty in deciding such issues on summary judgment, both motions are denied.

AIC has also filed two other motions for partial summary judgment. AIC seeks partial summary judgment [Doc. No. 141] that the contract did not require AIC to provide a "Data Mart." AIC also seeks partial summary judgment [Doc. No. 150] that certain provisions of the contract limit AIC's liability in the event it is found to have breached the contract. Again, factual disputes prevent resolution of these issues on summary judgment.

With respect to each of AIC's counterclaims, FedEx and counterclaim defendants have filed a motion for partial summary judgment [Doc. No. 137] arguing that each counterclaim is preempted, or otherwise barred. We agree that some of the state law counterclaims are barred as a matter of law.

Finally, FedEx and counterclaim defendants have moved for partial summary judgment [Doc. No. 120] arguing that AIC's claim for attorneys' fees and/or statutory damages fails under the Copyright Act. We find that genuine issues of fact preclude entry of summary judgment on this matter.

II.  <u>BACKGROUND</u>

Unless otherwise specifically indicated, the following material facts are undisputed.  Some additional material facts are also discussed in context.

A.  <u>The Parties</u>

FedEx is a Delaware corporation and motor carrier which provides small package pick-up and delivery services world-wide. FXSCS and FXG LTD are Ohio and Wyoming corporations, respectively. AIC is a California corporation that develops web-based enterprise and database compliance, management, and reporting systems.  In addition, AIC provides project management services to implement these systems.  Computer Aid is a Pennsylvania corporation that also develops computer software.

B.  <u>The Contract</u>

In July of 2002, FedEx and AIC entered into a contract whereby AIC, in exchange for $390,000, agreed to develop and maintain a software and database product known as the Safety Compliance Management System ("SCMS").  The SCMS was intended to automate certain reporting functions of FedEx's human resources department.

The issues raised in the pending motions primarily involve the following subjects and relevant contract provisions: (1) the transfer of historical data and Invoice No. 1077; (2) the

development of a "Data Mart"; and (3) confidential and proprietary information.

1. <u>Transfer of Historical Data & Invoice No. 1077</u>

A central controversy in this case involves the transfer of historical data and an invoice that AIC submitted to FedEx for such services.  It is undisputed that AIC performed certain work to facilitate the transfer of FedEx's historical data into the SCMS by developing external interfaces and data feeds.  However, as set forth below, the parties dispute the parties' responsibilities to perform such work, and the terms of payment.

The contract provides that the scope of services "is for the design, development and implementation of the [SCMS] and its software."  AIC's Proposal (Exhibit A to the contract) and the FXG-High Level Requirements Document (Appendix A to the Proposal), further define the scope of the contract and refer specifically to the transfer of historical data, as does the Requirements Specification.  However, none of these documents specify the roles or responsibilities of either FedEx or AIC in facilitating the transfer of historical data.

Just as the contract fails to assign the task of transferring historical data to one party, it also does not include details regarding the payment for such work.  Although the contract sets forth a fixed price for "Development Work and

Professional Services and Administration," it also mentions certain "discounted rates" for time associated with developing the external interfaces and facilitating the transfer of historical data. The parties never agreed on the amount of any "discounted rates" for such time.

In addition, the parties dispute when payment on invoices, and in particular Invoice No. 1077, was due. On July 1, 2003, AIC submitted Invoice No. 1077 to FedEx in the amount of $79,556.40. The invoice indicated that it was "due on receipt." The services described in the invoice were for 451 hours of "[p]rofessional services as per SCMS contract" and related to the development of external interfaces and data feeds to transfer FedEx's historical data into the SCMS. FedEx objected to the "due upon receipt" term, stating that it was unreasonable, and also claimed that such services were included within the fixed contract price of $390,000.

When FedEx failed to immediately pay Invoice No. 1077, AIC sent written notice to FedEx that it was in material breach of the contract. Despite FedEx's communications with AIC in response to that notice, on July 25, 2003, AIC purportedly terminated the contract because FedEx failed to cure the purported breach within fifteen (15) days of receiving notice of a material breach. FedEx responded to the purported termination, stating that it still viewed the contract as "remaining in force." FedEx

indicated it was reviewing the documentation to support Invoice No. 1077 and expressed its desire for the parties to "complete the SCMS as soon as possible in accordance with the contract."

Despite AIC's purported termination of the contract, FedEx and AIC exchanged email communications in August of 2003 regarding payment of Invoice No. 1077. The parties do not dispute that FedEx paid Invoice No. 1077 in full in September of 2003 and that AIC accepted this payment.

2. <u>Development of a Data Mart</u>

After FedEx paid Invoice No. 1077 in September of 2003, another disagreement regarding the scope of the contract emerged when the parties began discussing the remaining requirements to complete the SCMS project. Specifically, FedEx contended that AIC had to develop a Data Mart. Again, in various email communications, the parties disputed whether a Data Mart was within the scope of the contract. The dispute here arises because the parties do not agree on which, if any version, of the Requirements Specification, which refers to the Data Mart, controls. One version states specifically that "the Data Mart will be developed by AIC," while another version omits the "will be developed by AIC" language. Both versions state that the Data Mart is "out of the scope of the SCMS project." Each party attempts to prove that its version of the Requirements

Specification was controlling by submitting emails and deposition testimony.

### 3. Confidential and Proprietary Information

Finally, the parties disagree as to whether FedEx breached various provisions of the contract related to confidentiality and disclosure of proprietary information. The contract includes provisions that limit the disclosure of the subject matter in the contract, provide that all software furnished to FedEx is on a "licensed basis," and characterize the software as proprietary to AIC. The contract restricts FedEx from "distributing, transferring possession of or otherwise making available copies of the Licensed Product to any person other than FXG employees and contractors engaged in safety-related work matters, and other authorized users."

However, because FedEx did not have a functional SCMS, sometime after October 3, 2003, FedEx contacted Computer Aid to assist in completing the SCMS. FedEx permitted Computer Aid to access some portions of the SCMS. As discussed more fully in context, the parties, however, dispute the extent of this disclosure, and whether it violated the confidentiality provisions of the contract.

### C. The Claims

On October 7, 2003, FedEx filed this action. FedEx has amended its complaint to allege claims for breach of contract

(Count I), unjust enrichment (Count II), conversion (Count III), and declaratory judgment (Count IV). FedEx alleges that AIC is liable for, _inter alia_, failing to meet the agreed upon deliverables for the SCMS project, failing to complete a fully functioning SCMS or a Data Mart, and failing to support or maintain the SCMS.

In response, AIC brought claims against FedEx, and Computer Aid, Inc. AIC's Fourth Amended Counterclaim asserts the following: copyright infringement against all counterclaim defendants (Count I); misappropriation of trade secrets and proprietary information against all counterclaim defendants (Count II); breach of contract against FedEx only (Count III); conversion against all counterclaim defendants (Count IV); unjust enrichment against all counterclaim defendants (Count V); and declaratory judgment against all counterclaim defendants (Count VI).

III. <u>STANDARD OF REVIEW</u>

Fed.R.Civ.P. 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247(1986) (internal quotation marks omitted).

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Id. at 247-48. A dispute over those facts that might affect the outcome of the suit under the governing substantive law, i.e., the material facts, however, will preclude the entry of summary judgment. Id. at 248. Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Id. It is on this standard that the court has reviewed the parties' motions and responses.

IV. DISCUSSION

A.  Cross-Motions for Partial Summary Judgment
        - Non-Payment of Invoice No. 1077

Both parties have moved for partial summary judgment on their respective breach of contract claims. AIC has moved for summary judgment [Doc. No. 145] on the ground that FedEx's breach of contract claim fails because no contract was in effect at the time FedEx alleges that AIC breached the contract. AIC argues that FedEx materially breached the contract in July of 2003 when it failed to pay Invoice No. 1077 upon receipt, which resulted in the contract terminating at that time. According to AIC, it could not have breached the contract after July of 2003, as FedEx

contends, because there was no longer a contract in effect for AIC to breach.[1]  AIC further contends that because FedEx materially breached the contract first, AIC was not required to fulfill its duties under the contract, and no breach could result therefrom.

In response, FedEx argues that it did not materially breach the contract in July of 2003 and therefore, AIC's purported termination of the contract is of no force or effect.  FedEx argues that it could not have materially breached the contract for two reasons: (1) because the contract provides that invoices must be paid within 30 days; and (2) because the charges reflected in the invoice were not incurred pursuant to the contract.  Assuming that it did breach the contract by failing to pay Invoice No. 1077 upon receipt, FedEx alternatively argues that no reasonable jury could determine that its failure to do so constituted a material breach.

### 1. Ambiguities & Material Issues of Fact

The cross-motions on the breach of contract claims require a determination of whether a breach occurred, when it occurred, which party committed the breach, and whether the breach was material.  However, we cannot make these determinations on summary judgment, both because the contract is ambiguous on these key

---

[1]    Notably, AIC fails to cite to any portion of FedEx's Second Amended Complaint to support its contention that FedEx's breach of contract allegations are limited to those occurring after July of 2003.  See Doc. No. 148 at p. 6.

issues and because there are material issues of fact in dispute. Thus, the motions [Doc. Nos. 144 and 145] will be denied.

As discussed above, neither party can point to a specific contract provision that unambiguously delegates the responsibility for transferring historical data to either party. Rather, both parties must rely upon extrinsic evidence regarding the parties' "understanding" and "expectations" with respect to which party, AIC or FedEx, was responsible for the transfer of historical data for the SCMS project. See Doc. No. 177 at p. 5, Doc. No. 189 at p. 5, Doc. No. 167 at p. 7. Likewise, neither party can identify a provision in the contract that establishes when payment would be due for transferring historical data. Instead, both parties argue and submit evidence in support of its position that Invoice No. 1077 was either due "upon receipt," or due within thirty (30) days.

Whether a contract contains ambiguous terms is a matter of law to be decided by the trial court. Sanford Inv. Co., Inc. v. Ahlstrom Machinery Holdings, Inc., 198 F.3d 415, 421 (3d Cir. 1999); Mellon Bank, N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001, 1011 (3d Cir. 1980). A contract is clear or unambiguous "if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends." Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc., 247 F.3d 79, 93 (3d Cir.

2001) (citation omitted).  Conversely, a contract provision is ambiguous under Pennsylvania law if it is fairly susceptible to reasonable alternative interpretations.  See Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 614 (3d Cir. 1995)(defining ambiguity as "capable of being understood in more senses than one," or "obscure in meaning through indefiniteness of expression").

To determine whether ambiguity exists in a contract, the court may consider, among other things: (1) the words of the contract; (2) the alternative meaning suggested by counsel; and (3) the nature of the objective evidence to be offered in support of that meaning.  Mellon Bank, 619 F.2d at 1011.  If, after conducting this analysis, the court determines that the contract or a disputed term is ambiguous, then the interpretation of that term is to be resolved by the trier of fact in light of the proper extrinsic evidence offered by the parties in support of their respective interpretations.  See Hullett v. Towers, Perrin, Forster & Crosby, Inc., 38 F.3d 107, 111 (3d Cir. 1994); Mellon Bank, 619 F.2d at 1011; Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp., 40 F.3d 1416, 1424 (3d Cir. 1994).

Upon review of the applicable contract provisions, the parties' suggested meanings, and the nature of the objective evidence offered, or lack thereof, the court finds that the terms related to the responsibilities of the parties to transfer

historical data and payment therefor, are vague, indefinite, and susceptible to reasonable alternative interpretations. The nature of the extrinsic evidence does not provide objective indicia for the court to determine the parties' intentions. Because these contract provisions are obscure, indefinite, and susceptible to reasonable alternative meanings, it is for the jury to interpret them. Accordingly, the cross-motions for summary judgment on the breach of contract claims will be denied.

### 2. <u>Deciding Materiality on Summary Judgment</u>

Assuming the court had determined, as a matter of law, that the contract was clear and unambiguous, summary judgment would still not be appropriate as to whether either party materially breached the contract. Determining whether a breach is material is "inherently problematic" at the summary judgment stage. <u>See</u> <u>Norfolk S. Ry. Co. v. Basell USA Inc.</u>, 512 F.3d 86, 96 (3d Cir. 2008) (applying factors of Restatement (Second) of Contracts § 241). Although such a determination is not impossible, the court of appeals has recognized that it is particularly difficult where the "materiality analysis may well turn on subjective assessments as to the state of mind of the respective parties." <u>Id</u>.

Here, even were we to have determined that FedEx breached the contract, as a matter of law, the materiality determination would still best be left to the trier of fact. The dispute over materiality in this case is mired in subjective assessments as to

14

the "understanding" and "expectations" of the parties, as reflected in the numerous emails and deposition testimony upon which the parties rely. For these reasons, as well as those set forth above, the cross-motions would be denied on this alternate basis.

B. <u>AIC's Motion for Partial Summary Judgment – The Data Mart</u>

AIC moves for partial summary judgment [Doc. No. 137] that the contract did not require it to develop or provide a Data Mart as part of the SCMS project. The parties do not dispute that the contract does not specifically reference a Data Mart. The dispute here turns on the Requirements Specification, which was drafted several months after the parties signed the contract. Specifically, a fundamental factual dispute exists as to which version of the Requirements Specification was the final version upon which the parties agreed. Under one version, the Data Mart is explicitly the responsibility of AIC. Under the other version, no one is assigned responsibility for it. This dispute and the conflicting inferences of fact regarding the parties' negotiations and understandings with respect to a Data Mart must be resolved by the jury. Accordingly, summary judgment is not appropriate and AIC's motion will be denied.

C.  <u>FedEx's Motion for Partial Summary Judgment</u>
    <u>on the Counterclaims</u>

FedEx has moved for partial summary judgment [Doc. No. 137] on the grounds that AIC's counterclaims for copyright infringement, misappropriation of trades secrets, conversion, unjust enrichment and declaratory judgment are barred by one or all of the following theories: (1) failure to register the database with the United States Copyright Office; (2) the gist of the action doctrine; (3) inapplicability of the Pennsylvania Uniform Trade Secrets Act ("PUTSA") due to the PUTSA's effective date; and 4) preemption under the Copyright Act.  We will address each argument in turn.

1.  <u>AIC's Copyright Infringement Claims</u>

In Count I of its Fourth Amended Counterclaim, AIC alleges that FedEx and/or Computer Aid:

> copied and/or prepared derivative works based on all or part of the SCMS software, modules and other deliverables and/or materials provided by AIC to FXG, including without limitation the January 11, 2002 Proposal, various elements of the [ECM] program including the text of certain screen displays, the selection, definition and arrangement of the database fields, the relationships between the database tables, the testing scripts, the database logic, screen logic, and testing logic.

<u>See</u> Fourth Amended Counterclaim ¶¶ 50, 51-55.

According to FedEx, these copyright infringement claims are based in whole, or in part, upon the database underlying the SCMS. FedEx contends that AIC has only registered the SCMS application

16

program itself and has not registered the database underlying the SCMS application. Thus, FedEx argues that the court lacks jurisdiction under the Copyright Act over any claims related to a database due to a failure to register with the U.S. Copyright Office.

AIC contends, however, that the court has jurisdiction over such claims because "AIC's database is protected by its copyright registration of its computer program, including the ECM source code." AIC has a valid copyright in the Pava Source Code. According to AIC, the additions to the Pava Source Code, known as the ECM, are a derivative work of the Pava Source Code. AIC holds a valid copyright registration for the ECM. AIC argues that the database schema is "embodied in" the ECM registration. Viewing the evidence of record in the light most favorable to AIC as the non-moving party, the court finds that genuine issues of material fact preclude summary judgment on AIC's copyright infringement claims.

Copyright registration is a jurisdictional prerequisite to a copyright infringement action. See 17 U.S.C. § 411(a). To establish a claim for copyright infringement, a party must show: (1) ownership of a valid copyright; and (2) the unauthorized copying of the copyrighted work. Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc., 797 F.2d 1222, 1231-32 (3d Cir. 1986). A copyright registration certificate issued within five years of the

work's publication date constitutes <u>prima</u> <u>facie</u> evidence of the validity of a copyright. 17 U.S.C. § 410(c); <u>Masquerade Novelty, Inc. v. Unique Indus., Inc.</u>, 912 F.2d 663, 667-69 (3d Cir. 1990). This presumption is rebuttable and "shifts to the defendant the burden to prove the invalidity of the plaintiff's copyrights." <u>Masquerade</u>, 912 F.2d at 668-69 (citation omitted). In order to meet its burden, the defendant must produce evidence relevant to the grounds on which defendant claims the copyright is invalid. <u>Id</u>. ("The burden on the defendant to rebut the presumption varies depending on the issue bearing on the validity of the copyright.").

Under copyright law, a computer program is a "set of statements or instructions to be used directly or indirectly in a computer in order to bring about a certain result." 17 U.S.C. § 101. Copyright protection "extends to all the copyrightable expression embodied in the computer program." <u>See</u> U.S. Copyright Office Circular 61. Indeed, "copyright protection of [a] computer program[] may extend beyond the program['s] literal code to [its] structure, sequence, and organization." <u>Whelan Assocs., Inc.</u>, 797 F.2d at 1248; <u>Schiffer Publ'g Ltd. v. Chronicle Books, LLC,</u> 350 F.Supp.2d 613, 617 (E.D. Pa. 2004).

For purposes of copyright protection, a database is a compilation. <u>See</u> U.S. Copyright Office Circular 65. Compilations are subject to copyright protection as "literary works." <u>Id</u>.

18

While compilations are copyrightable, the copyright extends only to the "material contributed by the author of such work, as distinguished from the preexisting material employed in the work." 17 U.S.C. § 103(b).

The parties have not cited, and the court has not found, any controlling authority directly discussing to what extent a valid copyright in a computer program extends to a computer database. However, AIC cites several cases that are instructive on the issue. In <u>Madison River Management Co. v. Business Management Software Corp.</u>, 387 F.Supp.2d 521, 535 (M.D.N.C. 2005), the court found that a copyrighted computer software program covered the database at issue. In that case, it was undisputed that the software in question created the database, which the court found to be an original arrangement of facts. In that case, however, the parties had developed and presented a thorough factual record regarding how the copyrighted computer program utilized the data inputted into the system. The court found that the "raw data subjected to the [database's] structure, processes, triggers, program modules, and stored procedures" became the database. <u>Id</u>.

Likewise, in <u>DSMC, Inc. v. Convera Corp.</u>, 479 F.Supp.2d 68 (D.D.C. 2007), the court found that a database was embodied in a computer program registered with the Copyright Office and declined to dismiss the copyright claim. In that case, the court declined

to adopt the moving party's "narrow reading of what is protectable when a company registers a computer program." Notably, the district court in DSMC cited the Court of Appeals for the Third Circuit's decision in Whelan, which held that copyright protection of a computer program extends to nonliteral elements, including "structure, sequence, and organization." Id. (citing Whelan, 797 F.2d at 1248). See also, Clarity Software, LLC v. Allianz Life Ins. Co. of North America, Civ. No. 04-1441, 2006 WL 2346292 (W.D. Pa. Aug. 11, 2006)(finding that copyright in source code covered software's screen displays and output and explicit reference to screen displays on copyright registration did not render copyright claim invalid).

In light of these cases, we find FedEx's arguments unpersuasive for several reasons. First, FedEx tenuously relies on two unpublished and distinguishable cases in support of its contention that "courts have routinely dismissed claims for failing to register the database." [See Doc. No. 138 at p. 7]. Such a generalization and cursory analysis of the issue is not persuasive.

Further, after summarily discounting the "non-binding" but instructive cases discussed above, FedEx contends that AIC "has not and cannot present evidence demonstrating that the database schema is embodied in the program subject to copyright protection." See Doc. No. 186 at pp. 2-3. According to FedEx, it

is therefore impossible for this court, or a jury, to determine what is protected by AIC's copyrights because AIC has "lost or destroyed" certain source code. This position is equally tenuous on two grounds. First, the record reflects that a dispute exists regarding to what extent AIC has located and/or produced the entirety of the source code at issue. It appears from the record that at least some portions of the source code underlying the 1998 and the 2005 copyrights have been produced. Thus, there may be sufficient evidence for a reasonable juror to determine whether the database schema at issue here is embodied in the ECM computer program.

Second, because FedEx is challenging the validity of AIC's copyrights to the extent either extends to the database, FedEx bears at least some burden to produce relevant evidence that the copyrights do not cover the SCMS database. FedEx cannot satisfy its burden by merely arguing that AIC has failed to come forward with evidence that the database is covered by its registered copyrights.

Accordingly, we find that summary judgment is not appropriate. Genuine issues of material fact exist for a jury to determine the extent to which AIC's registered copyright extends to the database at issue here. FedEx's motion for partial summary judgment on AIC's copyright infringement claims related to a database will be denied.

### 2. AIC's Conversion and Misappropriation Claims - Gist of the Action Doctrine

In its motion for partial summary judgment, FedEx also contends that AIC's counterclaims against it for conversion (Count IV) and misappropriation of trade secrets and proprietary information (Count II) are barred by the gist of the action doctrine. According to FedEx, these claims necessarily depend on the rights of the parties set forth in the contract between AIC and FedEx.[2] As such, FedEx contends these claims are barred under the gist of the action doctrine because they sound in contract, rather than tort.

AIC contends that its counterclaims for conversion and misappropriation of trade secrets are "alternative bases of recovery for FedEx's wrongful conduct." According to AIC, if the contract does not provide a remedy for FedEx's conversion claim, the court should not apply the gist of the action doctrine to bar its tort claims. We find that the gist of the action doctrine bars AIC's counterclaim against FedEx for conversion but does not bar the claim for misappropriation of trade secrets and proprietary information.

The gist of the action doctrine "bars claims for allegedly tortious conduct where the gist of the conduct sounds in contract

---

[2]     Counterclaim Defendants do not argue that the gist of the action doctrine applies to bar these claims against FXSCS, FXG LTD, and Computer Aid because they were not parties to the contract between FedEx and AIC.

rather than tort." _Hospicomm v. Fleet Bank, N.A._, 338 F.Supp.2d 578, 582 (E.D. Pa. 2004) (citation omitted). The purpose of the doctrine is to "preclud[e] plaintiffs from re-casting ordinary breach of contract claims into tort claims." _eToll, Inc. v. Elias/Savion Adver., Inc._, 811 A.2d 10, 14 (Pa. Super. 2002). In applying this doctrine, a claim should be limited to a contract claim when "the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied in the law of torts." _Bohler-Uddeholm America, Inc._, 247 F.3d at 104 (quoting _Bash v. Bell Tel. Co._, 601 A.2d 825, 830 (Pa. Super. 1992) (overruled on other grounds)); _Pittsburgh Constr. Co. v. Griffith_, 834 A.2d 572, 582 (Pa. Super. 2003).

Federal courts interpreting Pennsylvania law have held that the gist of the action doctrine bars tort claims: (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract. _See_ _eToll_, 811 A.2d at 19 (citations omitted). Thus, where the agreement is not collateral to the claim, but rather "at the heart" of the claim, the "gist of the action" sounds in contract, not in tort. _See_ _Caudill Seed and Warehouse Co. v. Prophet 21, Inc._, 123 F.Supp.2d 826, 834 (E.D. Pa. 2000).

a. <u>Conversion</u>

FedEx first contends that the "gist of the action" doctrine bars AIC's counterclaim for conversion (Count IV). AIC alleges that FedEx wrongfully kept possession of the computer program it created pursuant to the parties' contract. <u>See</u> Fourth Amended Counterclaim ¶ 73. The validity of AIC's conversion claim depends on whether FedEx had a right to keep the computer program, which depends on the terms and performance of the contract. Courts have applied the "gist of the action" doctrine to conversion claims when entitlement to the chattel is predicated solely on the agreement between the parties. <u>See</u>, <u>e.g.</u>, <u>Murphy v. Mid East Oil Co.</u>, Civ. No. 06-1343, 2007 WL 527715, at *5-6 (W.D. Pa. Feb. 14, 2007)(dismissing conversion claim because it was dependent on the defendant's noncompliance with the terms of the agreements); <u>Montgomery v. Fed. Ins. Co.</u>, 836 F.Supp. 292, 301-02 (E.D. Pa. 1993)(dismissing conversion claim because of, <u>inter</u> <u>alia</u>, the "firmly accepted ... doctrine that an action for conversion will not lie where damages asserted are essentially damages for breach of contract"); <u>Pittsburgh Constr. Co.</u>, 834 A.2d at 584 (stating that where success of the conversion claim "depend[s] entirely on the obligations as defined by the contract," the "gist of the action" doctrine applies).

The plain language of AIC's conversion claim confirms that the heart of this claim is decidedly contractual and the rights

and duties arose from the parties' contract.  The contract is not collateral to AIC's counterclaim for conversion, it is the basis for it.  Whether FedEx had the right to keep the SCMS program depends entirely on the parties' rights and responsibilities under the contract.

We reject AIC's unsupported and unpersuasive argument that it can pursue its conversion claim as an "alternate" basis of recovery to its breach of contract claim.  Indeed, such attempts to "re-cast" a breach of contract claim into a tort claim are precisely what the gist of the action doctrine is intended to prevent.  In this case, AIC's conversion and breach of contract claims are "inextricably intertwined, the success of the conversion claim depending entirely on the obligations as defined by the contract."  See Pittsburgh Constr. Co., 834 A.2d at 584.  Accordingly, we find that the gist of the action doctrine bars AIC's counterclaim for conversion and summary judgment is appropriate on this claim.

   b.  Misappropriation of Trade Secrets and Proprietary
       Information

FedEx similarly argues that the gist of the action doctrine bars AIC's counterclaim for misappropriation of trade secrets and proprietary information (Count II).  FedEx relies on Bohler-Uddeholm America, Inc., 247 F.3d at 105, and argues that the misappropriation claim is also "inextricably intertwined" with AIC's breach of contract claim.  AIC alleges:

> The wrongful conduct ... as aforesaid constitutes a misappropriation of AIC's proprietary and confidential information and/or trade secrets, which includes, without limitation all intellectual property that AIC created, modified or provided to [FedEx] during the pendency of [the contract] and the parties' negotiations after the termination of such contract, including without limitation the January 11, 2002 Proposal, various elements of the [ECM] Program, including the database logic, screen logic, testing logic and/or other intellectual property belonging to AIC, and which, **under <u>both</u> applicable common law and the terms of the terminated contract** [], FXG was and is subject to a duty not to use, disclose, copy, distribute, transfer, decompile or disassemble.

<u>See</u> Fourth Amended Counterclaim ¶ 60 (emphasis added).

AIC argues that FedEx not only breached its contractual duties, but also that FedEx breached independent common law duties not to disclose or use information. Where a defendant's conduct violates some additional duty that is distinct from the obligations the defendant accepted by entering into the contract, the gist of the action doctrine does not apply. <u>Bohler-Uddeholm America, Inc.</u>, 247 F.3d at 105. Viewing the evidence in the light most favorable to AIC, we cannot say that AIC's claim for misappropriation of trade secrets is barred.

The elements of a misappropriation of trade secrets claim in Pennsylvania are: "(1) the existence of a trade secret; (2) communication of the trade secret pursuant to a confidential relationship; (3) use of the trade secret, in violation of that confidence; and (4) harm to the plaintiff." <u>Moore v. Kulicke &</u>

<u>Soffa Indus., Inc.</u>, 318 F.3d 561, 566 (3d Cir. 2003). "One who discloses or uses another's trade secret, without a privilege to do so, is liable to the other if...his disclosure or use constitutes a breach of confidence." <u>Id</u>. Therefore, the tort of misappropriation of trade secrets is based on a violation of a non-contractual duty to retain confidences, which is imposed as a matter of social policy rather than by mutual consensus.

While the gist of the action doctrine may bar any purported misappropriation claim arising solely from the written agreement between FedEx and AIC, this is not the only misappropriation that AIC complains of in its Fourth Amended Complaint. AIC contends that after the contract terminated in July 2003, FedEx misappropriated its trade secrets and proprietary information to Computer Aid. Here, the obligations underlying AIC's claim for misappropriation of trade secrets and proprietary information extend beyond FedEx's failure to adhere to any provision of the contract. As such, the counterclaim can properly be seen as sounding in tort. Thus, we cannot say that the "gist of the action" doctrine bars AIC's misappropriation counterclaim. Accordingly, the motion for partial summary judgment with respect to AIC's counterclaim for misappropriation of trade secrets is denied.

### 3. <u>AIC's Misapropriation Claim – Applicability of PUTSA</u>

Counterclaim defendants next move for partial summary judgment on AIC's counterclaim for misappropriation of trade secrets

and proprietary information (Count II) on the ground that the Pennsylvania Uniform Trade Secrets Act is inapplicable. According to counterclaim defendants, the alleged misappropriation began in December of 2003, before the statute's effective date of April 19, 2004. Further, to the extent any disclosures occurred after April 19, 2004, counterclaim defendants argue that providing the same information to FXG LTD or FXSCS is "simply a continuation of the alleged misappropriation of AIC's trade secrets" and is not actionable under the PUTSA.

AIC argues that material issues of fact remain as to the nature and timing of FedEx's and/or Computer Aid's disclosure of portions of the SCMS to FXG LTD and/or FXG LTD. According to AIC, there have been at least six separate acts of misappropriation. AIC contends, however, that counterclaim defendants have failed to set forth evidence of when they improperly disclosed information and when they began using the information. AIC offers evidence that Computer Aid's work on the new SCMS application did not begin until April of 2004 and certain modules were not completed until May or June of 2004. Thus, AIC argues that because work on certain aspects of the new SCMS did not begin until after the effective date of the PUTSA, "FedEx and [Computer Aid] could not have disclosed them to FXG LTD and FXSCS before the effective date." Further, AIC argues that any disclosures after the effective date cannot be a continuation of the misappropriation by FedEx and Computer Aid in

December of 2003 because FXG LTD and FXSCS are different defendants and disclosure to them constitutes a separate and distinct misappropriation. Even viewing the evidence in the light most favorable to AIC, the court finds that no genuine issue of fact exists and summary judgment is appropriate.

Pennsylvania adopted the Uniform Trade Secrets Act, 12 Pa. Con. Stat. § 5310, et seq. ("PUTSA"), in February of 2004. The Pennsylvania General Assembly provided that the PUTSA "shall not apply to misappropriation occurring prior to the effective date of this act, including a continuing misappropriation that began prior to the effective date of this act and which continues to occur after the effective date of this act." 2004 Pa. Laws 14 § 4. The Act became effective on April 19, 2004. Id. at § 5.

Here, the record is devoid of any specific facts regarding the nature or timing of the misappropriation of trade secrets or proprietary information that allegedly occurred after April 19, 2004. As set forth in Fed.R.Civ.P. 56(e), where, as here, a motion for summary judgment is made and properly supported, the opposing party "may not rely merely on allegations or denials in its own pleading; rather, its response must - by affidavits or as otherwise provided ... set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e). If the adverse party does not so respond, as the case here, "summary judgment should, if appropriate, be entered against that party." Id. Further, "it is not the

Court's obligation to sift through the record searching for a genuine issue of material fact." Dunkin' Donuts, Inc. v. Patel, 174 F.Supp.2d 202, 210 (D.N.J. 2001). "Rather, it is the parties' obligation to show the absence or existence of such an issue." Id. (citation omitted); see also Sterling Nat'l Mortgage Co. v. Mortgage Corner, Inc., 97 F.3d 39, 45 (3d Cir. 1996) (holding that the plaintiff was obliged to come forward with evidence sufficient to raise a triable issue and that "[m]ere speculation about the possibility of the existence of such facts" did not suffice).

        In this case, the moving parties have shown an absence of any issues of material fact regarding disclosures after April 19, 2004. Even drawing all reasonable inferences in the light most favorable to AIC, we must grant summary judgment in favor of the counterclaim defendants because of AIC's lack of evidentiary support for its contention that material issues of fact exist regarding any misappropriation after April 19, 2004. The factual record is devoid of specific facts as to what trade secrets or proprietary information FedEx or Computer Aid disclosed to FXG LTD or FXSCS after April of 2004. AIC cites only to general deposition testimony that development work for the new Computer Aid SCMS did not begin until April of 2004 and the programming of certain modules was not completed until May or June of 2004. This testimony, however, fails to set out facts demonstrating what trade secrets FedEx or Computer disclosed for the development and programming work.

Similarly, AIC cannot rely on its conclusory and speculative assertion that because work on certain aspects of Computer Aid's SCMS did not begin until after the effective date of the PUTSA, "FedEx and [Computer Aid] could not have disclosed them to FXG LTD and FXSCS before the effective date." Thus, we find that AIC has not set forth specific facts to demonstrate a genuine issue for trial regarding the trade secrets or proprietary information it asserts FedEx or Computer Aid disclosed in connection with the development work or programming that occurred after the effective date of the PUTSA. Accordingly, because the undisputed evidence of record demonstrates that the alleged misappropriation occurred prior to the effective date of the PUTSA, the motion for partial summary judgment will be granted.

4. <u>AIC's State Law Counterclaims - Preemption under the Copyright Act</u>

Counterclaim defendants next move for partial summary judgment on the ground that AIC's state law claims for conversion, unjust enrichment, declaratory judgment, and AIC's misappropriation of trade secrets claim against Computer Aid, FXG LTD, and FXSCS are preempted by Section 301 of the Copyright Act. According to FedEx, despite the completion of discovery, AIC has failed to produce facts to demonstrate that it has cognizable intellectual property interests in elements of its computer program that fall outside the protection of the Copyright Act. Further, counterclaim defendants

argue that AIC's claims for copyright infringement and its state law claims are "virtually identical."

AIC contends that it seeks to protect its "interests in both the copyrighted materials and the non-copyrightable materials" that it provided to FedEx. As set forth below, we will grant the motion with respect to AIC's counterclaims for unjust enrichment, declaratory judgment, and conversion and deny the motion with respect to the misappropriation of trade secrets claim.

Under the Copyright Act, state law claims which fall within the subject matter of copyright are preempted. See 17 U.S.C. 301(a). To determine whether a state law cause of action is preempted by the Copyright Act, courts employ a "functional test." Dun and Bradstreet Software Servs. v. Inc. v. Grace Consulting, Inc., 307 F.3d 197, 217 (3d Cir. 2002). This functional test involves two related inquiries: (1) does the subject matter of the state law claim fall within the subject matter of copyright law, and (2) is the state law right equivalent to the exclusive rights afforded under the Copyright Act. See Curtin v. Star Editorial, Inc., 2 F.Supp. 2d 670, 674 (E.D. Pa. 1998). If both requirements are not met, the state cause of action survives. Gemel Precision Tool Co., Inc. v. Pharma Tool Corp., 35 U.S.P.Q.2d 1019, 1026-27 (E.D.Pa. 1995).

With respect to the elements of a computer program, i.e., the source code and object code, the Court of Appeals for the Third

Circuit has determined that these literal elements are subject to copyright protection. See Fedex Ground Package Sys., Inc. v. Applications Intern. Corp., Civ. No. 03-1512, 2005 WL 2921633, *2 (W.D. Pa. 2005)(citing Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc., 797 F.2d 1222, 1232 (3d Cir. 1986)). Further, it is generally recognized that "the scope of the Copyright Act's subject matter is broader than the scope of the Act's protections. Id. (citations omitted). However, "a mere showing that copyright protection is unavailable for certain elements of the computer program will not necessarily decide the issue of whether those elements are within the 'subject matter' of the Copyright Act." Id. With these principles in mind we will address the subject matter of each claim in turn to determine whether the Copyright Act preempts any of these claims.

    a. Unjust Enrichment and Declaratory Judgment

Counterclaim defendants' motion [Doc. No. 137] and brief in support [Doc. No. 138] specifically reference and move for partial summary judgment as to AIC's purported unjust enrichment (Count V) and declaratory judgment claims (Count VI). See Doc. No. 137. However, in its opposition, AIC offers no argument and fails to even address why these two state law claims are not preempted under the Copyright Act.

Here, because counterclaim defendants have satisfied their initial burden by pointing out the absence of any genuine issue of

material fact that these claims should not be preempted and because AIC failed to address these counterclaims in their opposition, the court need not reach the merits.[3]  Clearly, AIC has failed to meet its burden of setting out any genuine issue for trial regarding whether such claims are preempted.  Fed.R.Civ.P. 56(e).

Thus, counterclaim defendants motion for partial summary judgment will be granted with respect to AIC's counterclaims for unjust enrichment (Count V) and declaratory judgment (Count VI).

b. <u>Conversion and Misappropriation of Trade Secrets</u>

Counterclaim defendants similarly argue that AIC's counterclaims for conversion and misappropriation of trade secrets, which are "virtually identical" to its copyright infringement claims are preempted.  AIC contends, however, that these counterclaims are not preempted because it is seeking to protect non-copyrighted or non-copyrightable material outside the Copyright Act.  Further, according to AIC, each of these counterclaims requires an "extra element" that qualitatively distinguishes it and its underlying

---

[3]     Notwithstanding, we note that courts have consistently held that an action for unjust enrichment is preempted by copyright law.  <u>See</u> <u>Curtin v. Star Editorial, Inc.</u>, 2 F.Supp 2d 670, 674 (E.D. Pa. 1998); <u>Long v. Quality Computers and Applications, Inc.</u>, 860 F.Supp. 191, 197 (M.D. Pa. 1994).  Likewise, where, as here, the declaration sought is of the ownership interests in intellectual property, such a declaratory judgment claim is preempted under the Copyright Act.  <u>See</u> <u>Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.</u>, 373 F.3d 296, 307 (2d Cir. 2004).

rights from those addressed by the Copyright Act. Thus, these claims are not preempted. We find in favor of the moving parties that the conversion counterclaim is preempted and will grant summary judgment. With respect to the counterclaim for misappropriation of trade secrets, however, we find in favor of AIC and will deny the motion for summary judgment.

i. Conversion

Most courts that have addressed the issue of conversion regarding software claims have found such claims preempted under the Copyright Act. See e.g., U.S. ex rel Berge v. Bd. of Trustees of the Univ. of Ala., 104 F.3d 1453, 1463 (4th Cir. 1997); Daboub v. Gibbons, 42 F.3d 285, 289 (5th Cir.1995); Meridian Project Sys., Inc. v. Hardin Constr. Co., LLC, No. 04-2728, 2006 WL 1062070, at *3-4 (E.D. Cal. Apr.21, 2006); Vigilante.com, Inc. v. Argus Test.com, Inc., No. 04-413, 2005 WL 2218405, at *14-15 (D.Or. Sept.6, 2005); Firoozye v. Earthlink Network, 153 F.Supp.2d 1115, 1124 (N.D.Cal. 2001).

In its conversion counterclaim (Count IV), AIC alleges that counterclaim defendants have continued to retain possession of AIC's intellectual property. This claim arises from the alleged misuse of the SCMS, which is equivalent to a copyright claim. Further, AIC's counterclaim does not have an extra element that takes it beyond the scope of copyright protection. Where, as here, the copyright infringement claim protects the same rights and remedies as the

state law claim for conversion, the state law claim is preempted and must be dismissed. Thus, we find that the summary judgment is appropriate with respect to AIC's counterclaim for conversion.

### ii. Misappropriation of Trade Secrets

Misappropriation causes of action are not preempted if they are based on claims not equivalent to the exclusive rights within the general scope of the Copyright Act. Dun & Bradstreet, 307 F.3d at 217. Generally, "courts recognize two distinct types of misappropriation of trade secrets: those based upon the use of plaintiff's work and those based upon the disclosure of material that a defendant has a duty to keep confidential." Long v. Quality Computers & Applications, Inc., 860 F.Supp. 191, 197 (M.D. Pa. 1994). Typically, claims based upon use are preempted while claims based upon disclosure are not, because they contain the extra element of violation of a duty. Id. "A state law misappropriation of trade secrets claim that requires a proof of breach of duty of trust or confidence to the plaintiff through the improper disclosure of confidential materials is qualitatively different because it is not an element of copyright infringement." Dun & Bradstreet, 307 F.3d at 217. Furthermore, "the breach of duty or trust represents unfair competitive conduct 'qualitatively different from mere unauthorized copying.'" Id. (citation omitted). Thus, the court of appeals has recognized that a trade secret claim based upon a breach of duty provides the extra element required to avoid preemption.

36

This is precisely what AIC argues here. According to AIC, FedEx disclosed its proprietary software and information to Computer Aid. Because FXG LTD and FXSCS are current users of the derivative SCMS that Computer Aid developed, counterclaim defendants have all "actively participated in a breach of a duty of confidence." Thus, AIC argues that its misappropriation counterclaim is not equivalent to the rights protected under the Copyright Act. FedEx, however, argues that summary judgment is appropriate because AIC has failed to demonstrate that counterclaim defendants (other than FedEx) owed a duty of confidence to AIC and its misappropriation claim mirrors its copyright claim. We agree in part, but decline to grant summary judgment.

First, with respect to FedEx's argument that AIC has failed to set forth any evidence that FXG LTD and FXSCS had a duty of confidentiality, the nature of the counterclaim defendants' relationships and the control FedEx had over FXG LTD and FXSCS remains a factual question for a jury to decide. Second, construing the allegations of Count II broadly and viewing the limited evidence in the light most favorable to AIC, we will not grant summary judgment on the misappropriation claim. Although we agree with counterclaim defendants that the misappropriation and copyright claims are "virtually identical," we find some evidence that must be fully developed at trial before we can determine what the true basis for the misappropriation claim is and whether it is functionally

equivalent to the copyright claim. AIC has alleged both unauthorized use and disclosure by counterclaim defendants. Further, AIC has identified at least one non-copyrighted or non-copyrightable item it seeks to protect, _i.e._, the menu flow, which it claims is not subject to copyright protection. Accordingly, we will deny the motion for partial summary judgment with respect to AIC's misappropriation claim.

    D. <u>Motions for Partial Summary Judgment Regarding Available Damages and Remedies</u>

Finally, the parties have also filed motions for partial summary judgment regarding their available damages and remedies. We will address each of these motions in turn.

    1. <u>AIC's Motion for Partial Summary Judgment Regarding Limitation of Damages</u>

In the event it is ultimately found to have breached the contract, AIC seeks to limit its liability. In its motion [Doc. No. 150], AIC contends that FedEx's damages and/or remedies are limited to those set forth in Article 6 and Article 8 of the contract. According to AIC, these limitation provisions are enforceable under Pennsylvania law.

FedEx argues that the terms of the contract are limited to specific types of claims. According to FedEx, the liquidated damages provision applies only to claims that AIC delayed or failed to meet the milestone dates in the contract. Likewise, the

limitation of remedies provision applies only to claims for breach of warranty. FedEx also argues that these provisions cannot limit its remedies or AIC's liability because the provisions are predicated on the actual completion of the SCMS, which undisputedly did not occur. FedEx further contends that if the provisions are applicable to any of its claims against AIC, they are unenforceable because the circumstances here cause both limited remedies to fail of their essential purpose. The court finds that genuine issues are in dispute which are material to both the purported breach of the contract and the enforceability of the limitation of liability provision. Thus, the motion for partial summary judgment will be denied.

2. <u>FedEx's Motion for Partial Summary Judgment to Exclude Attorneys' Fees & Statutory Damages Pursuant to the Copyright Act</u>

Finally, FedEx and counterclaim defendants argue that AIC is not entitled to attorneys' fees and statutory damages under the Copyright Act because AIC registered its copyright in the ECM after the alleged infringement occurred. [<u>See</u> Doc. No. 120]. Thus,

pursuant to 17 U.S.C. § 412[4], attorneys fees and statutory damages are unavailable.

AIC, however, contends that it is entitled to attorneys' fees and statutory damages if it prevails on its claims. AIC argues *inter alia*, that its copyright infringement claims are not limited to the ECM and that material issues of fact preclude partial summary judgment on the issue of when counterclaim defendants, namely FXSCS and FXG LTD, began using the SCMS software and the ECM.

Again, we find that genuine issues of fact exist with respect to the extent of AIC's copyright infringement claims and when the alleged infringement occurred. Thus, the motion for partial summary judgment regarding available damages under the Copyright Act will be denied.

V.  CONCLUSION

For the foregoing reasons, the motions will be granted in part and denied in part.

An appropriate order follows.

---

[4]  Section 412 of the Copyright Act sets forth certain remedies for infringement and provides in relevant part: "no award of statutory damages or of attorney's fees ... shall be made for- (1) any infringement of copyright in an unpublished work commenced before the effective date of its registration, or (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after first publication of the work."

```
                    IN THE UNITED STATES DISTRICT COURT
                   FOR THE WESTERN DISTRICT OF PENNSYLVANIA


     FEDEX GROUND PACKAGE            )
     SYSTEM, INC.                    )
              Plaintiff/Counter-     )
              Defendant              )
                                     )
         v.                          )
                                     )
     APPLICATIONS INTERNATIONAL      )
     CORPORATION                     )Civil Action No. 03-1512
              Defendant/Counter-     )
              Plaintiff              )
                                     )
         v.                          )
                                     )
     COMPUTER AID, INC.; FEDEX       )
     SUPPLY CHAINS SERVICES, INC.;   )
     FEDEX GROUND PACKAGE SYSTEM     )
     LTD.,                           )
              Counter-Defendants     )
```

<u>ORDER</u>

AND NOW, this 12th day of September, 2008, upon consideration of the pending motions, IT IS HEREBY ORDERED:

1.  The cross-motions for partial summary judgment on the breach of contract claims [Doc. Nos. 144 and 145] are DENIED;

2.  AIC's motion for partial summary judgment regarding a Data Mart [Doc. No. 141] is DENIED;

3.  FedEx's motion for partial summary judgment [Doc. No. 137 ] is GRANTED, IN PART (as to AIC's conversion, PUTSA, unjust enrichment, and declaratory judgment claims), AND DENIED IN PART;

4.  FedEx and Counterclaim Defendants' motion for partial summary judgment to exclude attorney's fees and statutory damages [Doc. No. 120] is DENIED; and

5. AIC's motion for partial summary judgment regarding damages [Doc. No. 150] is DENIED.

BY THE COURT:

s/Gary L. Lancaster    , J.
Gary L. Lancaster,
United States District Judge

cc:   All Counsel of Record