IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FEDEX GROUND PACKAGE SYSTEM, INC., | ) ) ) | |
| Plaintiff/Counter-Defendant, | ) ) ) | |
| v. | ) ) | |
| APPLICATIONS INTERNATIONAL CORPORATION, | ) ) ) | |
| Defendant/Counter-Plaintiff, | ) ) ) | Civil Action No. 03-1512 |
| v. | ) ) | |
| COMPUTER AID, INC.; FEDEX SUPPLY CHAIN SERVICES, INC.; FEDEX GROUND PACKAGE SYSTEM LTD., | ) ) ) ) ) | |
| Additional Counter-Defendants. | ) ) | |

MEMORANDUM OPINION

Gary L. Lancaster                                    February 11, 2010
Chief Judge

This action arises out of a contract between plaintiff, FedEx Ground Package System, Inc. ("FXG") and defendant, Applications International Corporation ("AIC"). FXG alleges that AIC breached a contract to develop and maintain a computer software and database program known as the Safety Compliance Management System ("SCMS" or "AIC SCMS"). [Doc. No. 54]. In addition, FXG asserts claims for unjust enrichment, conversion, and declaratory judgment.

AIC has filed counterclaims for, <u>inter alia</u>, copyright infringement (Count I) and misappropriation of trade secrets (Count II) against FXG and third party defendants, Computer Aid, Inc.

("CAI"), FedEx Supply Chain Services, Inc. ("FXSCS"), and FedEx Ground Package System Ltd. ("FXG LTD") based upon the same contract. [Doc. No. 101]. Third party defendants and plaintiff FXG are collectively referred to herein as "FedEx" or "counter-defendants".

Pending before the court is FedEx's motion to preclude the expert testimony of Michael Ian Shamos, Ph.D., J.D., regarding AIC's copyright infringement and misappropriation of trade secrets counterclaims. FedEx contends that Dr. Shamos' testimony should be precluded because it consists of nothing more than improper legal conclusions. Alternatively, FedEx argues that Dr. Shamos' testimony does not meet the reliability requirements of Rule 702 of the Federal Rules of Evidence and <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993), and its progeny. For the reasons that follow, FedEx's motion will be granted.

A.  <u>BACKGROUND FACTS</u>

In July of 2002, FXG and AIC entered into a contract pursuant to which AIC agreed to develop and maintain the SCMS for FedEx in exchange for $390,000. The SCMS is an electronic data collection tool that enables FedEx to automate certain reporting functions of its human resources department. AIC has developed two different works or versions of its SCMS: the 1998 version and the 2005 version. According to AIC, the 1998 and 2005 versions

2

(collectively referred to herein as the "works") were registered with the United States Copyright Office.

AIC alleges that FedEx infringed upon AIC's copyrights in the SCMS and misappropriated AIC's trade secrets when: (1) FedEx continued to use AIC's SCMS after the FXG-AIC contract was terminated; and (2) FedEx copied the AIC SCMS screen displays or used some other aspect of AIC's SCMS in order to assist a third party, CAI, to develop a new SCMS for FedEx's use. CAI's SCMS is the computer software system that FedEx commissioned after the AIC SCMS shut down in December of 2003.

In support of its copyright infringement and misappropriation of trade secrets counterclaims, AIC intends to offer the expert testimony of Dr. Shamos at trial. Dr. Shamos is a professor in computer science, founder and former president of two software development companies, and a lawyer. Consistent with Dr. Shamos' conclusions in his expert report, AIC intends for Dr. Shamos to testify at trial regarding: (1) whether AIC's copyrights are valid; (2) the scope of AIC's copyrights; (3) whether FedEx infringed upon AIC's copyrights; and (4) whether FedEx misappropriated AIC's trade secrets.

Dr. Shamos' expert report consists of four sections. The first section sets forth Dr. Shamos' background and qualifications. The second section bears the heading, "Legal Principles" and simply sets forth general legal guidelines that form the basis of Dr.

3

Shamos' conclusions. The third section bears the heading "Relevant Factual Background" and sets forth facts derived from AIC's copyright registration certificates, Circular 61 of the U.S. Copyright Office, case law, and materials that AIC has deposited with the U.S. Copyright Office. The fourth and final section of Dr. Shamos' report sets forth Dr. Shamos' conclusions, which are as follows:

> (1) "The Registrations for the Works are valid."
>
> (2) "Each of the Works has been infringed by FedEx and/or CAI. Specifically, at least the following rights of the copyright owner have been infringed because FedEx and/or CAI, without license to do so:
>
>   a.  reproduced the copyrighted works in copies or phonorecords (17 U.S.C. § 106(1));
>
>   b.  prepared or caused to be prepared derivative works based upon the copyrighted works (17 U.S.C. § 106(2));"
>
> (3) "The Registrations extend to the entire Works claimed, not just the portions corresponding to the material deposited with the Copyright Office."
>
> (4) "If FedEx and/or CAI copied or otherwise used the data structures from AIC's SCMS, and if AIC established that such data structures are trade secrets, such copying and/or use would constitute misappropriation of AIC's trade secrets."

[Doc. No. 238, Ex. A].

FedEx filed a motion <u>in limine</u> to exclude the expert testimony of Dr. Shamos, contending that Dr. Shamos' conclusions are improper legal opinions and are unreliable within the meaning of Federal Rule of Evidence 702, <u>Daubert</u>, and its progeny.

4

AIC disagrees, contending that Dr. Shamos' opinions are not exclusively legal opinions, are based on sufficient facts, data, and specialized knowledge as required by Federal Rule of Evidence 702 and <u>Daubert</u>, and fall within the realm of appropriate expert testimony. [Doc. No. 261].

During the pre-trial conference on September 11, 2009, the court denied, without prejudice, FedEx's motion to preclude the testimony of Dr. Shamos, but granted FedEx's request for a <u>Daubert</u> hearing on that motion pursuant to Federal Rule of Evidence 104.[1] [Doc. No. 279].

During the December 15, 2009 <u>Daubert</u> hearing, Dr. Shamos testified that the "Legal Principles" section of his report "essentially sets forth an array of legal principles regarding copyright law." 12/15/09 Hrg. Tr. at 15:20-23. Dr. Shamos agreed with counsel for FedEx that the opinions he rendered turned on these legal principles. <u>Id.</u> at 15:24 - 16:1. He testified at length about the numerous legal conclusions set forth in his report. For example:

> Q. Would you agree that Paragraph No. 11, including its subparts, essentially sets forth an array of legal principles regarding copyright law?
> A. Yes.

<u>Id.</u> at 15:20-23.

---

[1] "Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court." Fed. R. Evid. 104(a).

\* \* \*

    Q. The conclusion that the instruction is not mandatory, that's your interpretation of Circular 61 as a legal matter, fair?
    A. Yes.

Id. at 23:12-15.

\* \* \*

    Q. Paragraphs 22 and 23 are simply quotations of Circular 61?
    A. Yes.

Id.

\* \* \*

    Q. Then the conclusion, that the registration, the 1998 registration, covers the screen displays, that's a legal conclusion?
    A. Yes.

    Q. For [paragraph] 25, same story, statement of fact and a legal conclusion, correct?
    A. Yes.

    Q. [Paragraph] 26, that's simply a legal conclusion, you provide case authority [for], fair?
    A. Yes.

Id. at 24:5-14.

\* \* \*

    Q. Paragraph 35 is a pure statement of the law, correct?
    A. Yes.

Id. at 36:11-12.

Dr. Shamos even admitted that his fourth and final conclusion, (supra at p. 4), is "simply a legal conclusion." Id. at 37:11-16.

Similarly, Dr. Shamos testified that many of the purported

6

facts contained in the "Relevant Factual Background" section of his report were established solely by his review of the relevant copyright registration certificate and materials. Almost all of those facts are a recitation of portions of the copyright certificate or other related materials. In his report, Dr. Shamos explicitly indicates that many of the facts he sets forth are "according to the [copyright] registration certificate." For example:

> Q. [D]id you do anything over and above looking at the registration certificate to verify that ... the registered work was in fact a new computer program.
> A. No.

Id. at 18:9-12.

> Q. So the statement in Paragraph 14 is simply a recitation of what's in the registration certificate itself, fair?
> A. I don't think the registration certificate uses the phrase, "new computer program," but otherwise, yes.

Id. at 19:7-10.

> Q. Did you do anything, sir, other than looking at the registration certificate, to verify whether the first sentence of Paragraph 15 was accurate?
> A. No, well, the first sentence of 15 is accurate.
>
> Q. Sir -
> A. Because it says that it's according to the registration certificate.

Id. at 19:16-22.

In sum, Dr. Shamos' testimony establishes that, other than looking at: (1) the relevant copyright registration certificate; (2) Circular 61 of the U.S. Copyright Office; (3) materials that

7

AIC submitted to the U.S. Copyright Office, and (4) case law, Dr. Shamos did nothing to independently verify any of the facts set forth in his expert report.

B. <u>DISCUSSION</u>

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

The Court of Appeals for the Third Circuit has expressed the three main requirements of Rule 702 as follows: (1) the proffered witness must be an "expert" (<u>i.e.</u>, qualified by knowledge, skill, training, or education); (2) the expert must testify about matters requiring scientific, technical, or specialized knowledge; and (3) the expert's testimony must assist the trier of fact. <u>Pineda v. Ford Motor Co.</u>, 520 F.3d 237, 244 (3d Cir. 2008). Whether to permit expert testimony on a particular issue is left to the discretion of the trial court. <u>United States v. Leo</u>, 941 F.2d 181, 196 (3d Cir. 1991).

FedEx does not challenge Dr. Shamos' qualifications as an expert. 12/15/09 Hrg. Tr. at 5:12-17. Rather, FedEx contends that Dr. Shamos' testimony should be excluded because his conclusions are: (1) improper legal opinions, and, to the extent the court finds that Dr. Shamos' opinions are not legal conclusions, they (2) fail to satisfy Daubert standards, as they are unreliable, cannot be tested, and are not supported by any technical principles or methodology.

AIC, countering, contends that Dr. Shamos' opinions and conclusions are proper and reliable as they relate to: (1) whether AIC's copyrights are valid; (2) the scope of AIC's copyrights; (3) whether FedEx infringed upon AIC's copyrights; and (4) whether FedEx misappropriated AIC's trade secrets.

We agree with FedEx and will preclude Dr. Shamos from testifying at trial for the following reasons.

1. Dr. Shamos' conclusions are improper legal opinions.

FedEx first argues that Dr. Shamos' expert report and testimony should be excluded because his conclusions are improper legal opinions. In response, AIC contends that Dr. Shamos' report and testimony set forth the same type of expert opinion regarding what is and what is not protected under copyright law that the Court of Appeals for the Tenth Circuit found appropriate in Autoskill, Inc. v. Nat'l Educ. Support Sys. Inc., 994 F.2d 1476 (10th Cir. 1991). We disagree.

9

"[T]he District Court must ensure that an expert does not testify as to the governing law of the case." Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 217 (3d Cir. 2006). While Federal Rule of Evidence 704(a) allows an expert witness to give expert testimony that embraces an ultimate issue to be decided by the trier of fact, an expert witness is prohibited from rendering a legal opinion. Id. at 217 (citation and quotations omitted). It is the duty of the court, not of any witness, to explain the law to the jury. Leo, 941 F.2d at 196. District courts shall "exclude opinions phrased in terms of inadequately explored legal criteria." Fed. R. Evid. 704, advisory committee's note.[2]

Ultimately, district courts prohibit experts from offering legal opinions because such testimony is not helpful to the trier of fact. Leo, 941 F.2d at 197. In other words, an expert's legal opinion "is prohibited [when] it would usurp the District Court's pivotal role in explaining the law to the jury." Berckeley, 455 F.3d at 217 (citation omitted).

Here, Dr. Shamos' expert report does nothing more than recite general legal principles and apply them to AIC's version of the facts in the case. A significant portion of Dr. Shamos' report

---

[2] This standard is no different for a witness who is qualified as an expert and is also an attorney, like Dr. Shamos. Haberern v. Kaupp Vascular Surgeons Ltd., 812 F. Supp. 1376, 1378 (E.D. Pa. 1992) (holding that expert testimony as to whether employer's practice violated ERISA was an inadmissible legal conclusion).

10

references case law and federal statutes, and an entire section of the report sets forth exactly what its heading indicates, "Legal Principles." Throughout his report, Dr. Shamos repeatedly opines as to what is "required under the law" and whether the parties "complied with the Act" or other statutory requirements. He further opines that if certain facts are true, then a particular legal conclusion (i.e., infringement) will follow - a role that falls within the purview of the jury, not the realm of expert witness testimony.

Contrary to AIC's assertion, the fact that Dr. Shamos is a lawyer and professor of computer science who has testified as an expert witness many times in the past, and who has never had his testimony excluded by a court, does not change the result here. Dr. Shamos' expert report is nothing more than a compilation of legal conclusions. He arrived at four legal conclusions without explaining how he reached each one. In coming to his conclusions, Dr. Shamos admits he weighed the credibility of testimony offered in this litigation. 4/25/07 Shamos Dep. at 73:12-16 ("I have also heard that CAI claims that it did nothing with those [AIC's] materials, a claim that I don't find credible. So that forms the basis of my opinion; part of the basis of my opinion."). It is the duty of the jury, not an expert witness, to decide credibility. Coney v. NPR, Inc., No. 03-1324, 2007 WL 2571452, at *10 (E.D. Pa. Aug. 31, 2007) (Expert testimony regarding the credibility of

another witness "encroaches upon the jury's vital and exclusive function to make credibility determinations, and therefore does not assist the trier of fact as required by Rule 702[.]") (citations and quotations omitted). To allow such testimony at trial would usurp the court's duty to instruct the jury on the law and the jury's role of determining credibility of witnesses and applying the law to the evidence.

AIC's reliance on Autoskill, Inc. v National Educ. Support Sys., Inc., 994 F.2d 1476 (10th Cir. 2003), is misplaced. In Autoskill, the district court held that, in determining whether two computer programs were substantially similar in a copyright infringement case, it was proper for the court to evaluate and rely on expert testimony. Autoskill, Inc. v. Nat'l Educ. Support Sys., Inc., 793 F. Supp. 1557 (N.M. 1992). The Court of Appeals for the Tenth Circuit affirmed the district court's grant of a preliminary injunction and remanded the matter to the district court for further proceedings. Autoskill, 994 F.2d at 1499. The court of appeals did not discuss whether such expert testimony was permissible, but made a number of references to the testimony of experts in the case. Specifically, the court employed an abstraction-filtration-comparison analysis[3] to determine whether

---

[3] In a copyright infringement case, an abstraction-filtration-comparison analysis requires the court to retrace, in reverse order, the steps taken by a computer program's designer, beginning with the code and ending with the program's ultimate function. Id. at 1492.

12

copyright infringement existed, and in doing so, the court relied on expert testimony at the filtration step. Here, as FedEx correctly points out, Dr. Shamos' expert report makes no mention of an abstraction-filtration-comparison analysis nor anything similar. [Doc. No. 273].

Furthermore, the district court in <u>Autoskill</u> explicitly stated that it did not rely on any of the legal conclusions provided by the expert in making its determination. <u>Autoskill</u>, 793 F. Supp. at 1568 ("Dr. Olson gave various opinions as to what he believed legal conclusions should be in a number of areas based upon his review of legal materials and the programs at issue.... I need not rely upon such conclusions. I have relied particularly upon the testimony of Dr. Olson as to the similarities between the programs and the importance of those similarities for teaching reading. I have also relied upon the testimony of Dr. Olson as to the uniqueness of the Autoskill Program.").

We find that Dr. Shamos' opinions are improper legal conclusions. Because Dr. Shamos' opinions result from nothing more than an application of law to the facts in issue as alleged by AIC, Dr. Shamos' opinions will not aid the jury in understanding the evidence or in resolving any factual dispute. Accordingly, Dr. Shamos' testimony will be excluded from trial.

2. <u>Dr. Shamos' opinions fail to satisfy Rule 702 and Daubert.</u>

Even if Dr. Shamos' opinions were not legal conclusions, they

13

would still be inadmissible. Federal Rule of Evidence 702 mandates that expert opinions be the "product of reliable principles and methods" that are "applied ... reliably to the facts of the case." In Daubert, the United States Supreme Court established that trial courts must perform a "preliminary assessment of whether the reasoning and methodology underlying [an expert's] testimony is scientifically valid," and whether that reasoning or methodology "properly can be applied to the facts at issue in the case." 509 U.S. at 592-93.

The proponent of expert testimony must "demonstrate by a preponderance of evidence that their opinions are reliable." In re Paoli Railroad Yard PCB Litig., 35 F.3d 717, 743 (3d Cir. 1994). The court's determination of whether this standard has been met turns on the methods and reasoning employed by the expert. Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 806 (3d Cir. 1997). The non-exclusive factors that district courts take into account in evaluating whether a particular methodology is reliable include:

    (1)  whether a method consists of a testable hypothesis;
    (2)  whether the method has been subject to peer review;
    (3)  the known or potential rate of error;
    (4)  the existence and maintenance of standards controlling the technique's operation;
    (5)  whether the method is generally accepted;
    (6)  the relationship of the technique to methods which have been established to be reliable;
    (7)  the qualifications of the expert witness testifying based on the methodology; and
    (8)  the non-judicial uses to which the method has been put.

Elcock v. Kmart Corp., 233 F.3d 734, 745-46 (3d Cir. 2000) (citations omitted).

Although Dr. Shamos admits that he was engaged as a "[t]echnical expert" in this case, 4/25/07 Shamos Dep. at 65:17 - 66:7, he fails to support his conclusions with any technical principles, methodology, or other sound reasoning. During his deposition, Dr. Shamos testified that he "[p]ossibly" applied some technical principles in forming his opinions. Id. at 88:12 - 89:6. When questioned about those principles, Dr. Shamos responded that he "has learned all kinds of things, [and] seen all kinds of things" during his "40 years experience in computer software." Id. at 89:15-17. Dr. Shamos' life experience, however, goes more towards his qualifications then to his ability to testify as an expert in this particular matter. No matter how strong, Dr. Shamos' qualifications alone are simply not enough to establish the requisite level of reliability required by the Federal Rules and Daubert.

Dr. Shamos likewise fails to set forth any reasoned methodology employed in forming his opinions. During his deposition, Dr. Shamos admitted that he did not reach his conclusions via a generally-accepted methodology. Id. at 90:14-19 ("A. There are many opinions that experts offer that don't derive from a generally-accepted methodology. Q. Are those the types of opinions you have offered in this case? A. I think so.").

15

AIC has acknowledged that, in order to offer Dr. Shamos' testimony at trial, Dr. Shamos must "evaluate and compare Applications International's and Computer Aid's SCMS." [Doc. No. 254 at p. 5]. Nevertheless, Dr. Shamos admitted that he did not do a side-by-side comparison of AIC's SCMS screen displays with CAI's SCMS screen displays. Id. at 51:25 - 52:21. Rather, Dr. Shamos took only "fleeting looks" at AIC's and CAI's SCMS screen displays during demonstrations. Id. at 52:15-16.

In addition, Dr. Shamos concluded that AIC's 2005 SCMS was a derivative work of AIC's 1998 SCMS, yet he never conducted a technical review of either work. 12/15/09 Hrg. Tr. at 20:1 - 21:9. Dr. Shamos came to this conclusion by relying solely on the word of the Vice President of AIC:

> Q. Going back to the first part of that answer then, how have you been able to determine ... that the 2005 registration is a piece of derivative work from the 1998 registration, if you have never looked at the source code or screen shots for the 1998 registration?
> A. Because there's factual background.  The 2005 system was based on the 1998 system.  It didn't arise like the phoenix from the ashes.
>
> Q. How do you know that?
> A. I have been told that.
>
> Q. By whom?
> A. Mr. Field [AIC's Vice President].
>
> Q. What did you do to verify that?
> A. I didn't conduct any independent verification.
>
> Q. So you have not sat down, looked at the 1998 source

```
code versus the 2005 source code?⁴  We have established
that?
A. Yes.
```

4/25/07 Shamos Dep. at 69:21 - 70:23.

Furthermore, Dr. Shamos admitted that there is nothing in his report about: (1) the average timeline for development of a SCMS system similar to those at issue here; (2) the type of expertise required to develop the same or a similar SCMS system; or (3) CAI's ability to develop such a system. 12/15/09 Hrg. Tr. at 34:17 - 35:1.

In sum, Dr. Shamos has failed to support his conclusions with any evidence, technical principles, or methodology, leaving FedEx with no means by which to test and/or challenge the validity of those conclusions. Dr. Shamos' expert report consists of a string of legal principles, assumed facts (some of which Dr. Shamos could have and should have independently verified), and unsupported legal conclusions that are unreliable and fail to satisfy the standards of Rule 702 and <u>Daubert</u>. As such, Dr. Shamos will be precluded from testifying at trial.

C. CONCLUSION

While Dr. Shamos possesses the correct background and training

---

[4] A "source code" is a computer program. It contains variable declarations, instructions, and other statements that tell the program how to function. AIC "does not contend that Counterclaim Defendants copied its source code." [Doc. No. 261 at p. 4]; see also 12/15/09 Hrg. Tr. at 35:8.

17

to testify as a computer science expert, we do not believe that Dr. Shamos' opinions will assist the trier of fact in this case. Dr. Shamos has only rendered legal opinions and failed to offer any technical opinions supported by an independent investigation and generally-accepted methodology. As such, FedEx's motion to exclude the expert testimony of Dr. Shamos is granted. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FEDEX GROUND PACKAGE SYSTEM, INC.,<br>    Plaintiff/Counter-Defendant, | ) ) ) ) ) | |
| v. | ) ) | |
| APPLICATIONS INTERNATIONAL CORPORATION,<br>    Defendant/Counter-Plaintiff, | ) ) ) ) ) | Civil Action No. 03-1512 |
| v. | ) ) | |
| COMPUTER AID, INC.; FEDEX SUPPLY CHAIN SERVICES, INC.; FEDEX GROUND PACKAGE SYSTEM LTD.,<br>    Additional Counter-Defendants. | ) ) ) ) ) ) | |

ORDER

AND NOW, this 11th day of February, 2010, upon consideration of counter-defendants' motion to exclude the expert testimony of Michael Shamos [Doc. No. 238] and the briefs, testimony, and other materials filed in opposition to and in support thereof, IT IS HEREBY ORDERED that the motion is GRANTED.

BY THE COURT:

_____, Chief J.

cc: All Counsel of Record